E-FILED
Thursday, 24 March, 2022  09:15:50 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **GERALD HARBOUR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-3267** |
| | ) | |
| **PRAIRIELAND FSC, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Defendant Prairieland FSC, Inc.'s ("Prairieland" or "Defendant") Motion for Summary Judgment (d/e 37) and Plaintiff Gerald Harbour's ("Plaintiff") Motion for Summary Judgment (d/e 38).  Genuine issues of material fact exist as to each of the Counts in the Amended Complaint as well as to Defendant's counterclaim.  Therefore, Defendant's Motion (d/e 37) is DENIED, as is Plaintiff's Motion (d/e 38).  However, because the factual record is undeveloped as to Count II of the Amended Complaint, the parties are given leave to refile their motions with supplementation therein in accordance with this Opinion.

# I.   FACTS

The Court draws the following facts from the parties' Local Rule 7.1(D)(1)(b) statements of undisputed material facts.  The Court discusses any material factual disputes in its analysis.  Immaterial facts or factual disputes are omitted.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  <u>See</u> Civil LR 7.1(D)(2)(b)(2).  In addition, if any response to a fact failed to support each allegedly disputed fact with evidentiary documentation, that fact is deemed admitted.  <u>Id.</u>

Plaintiff Gerald Harbour began working for agriculture supply company Lincoln Land, FS, Inc. in 1997.  In 2013, Lincoln Land merged with another agriculture supply company to form Prairieland, FS, Inc., and Plaintiff's employment continued with Prairieland after the merger.

In August 2013, Plaintiff and Defendant entered into an Employment Agreement.  Though the contract bears the Lincoln Land, FS, Inc. logo, the parties do not dispute that the Employment Agreement governed Plaintiff's employment with Defendant at all

relevant times in this case.  The Agreement specifies how Plaintiff

was to be compensated, stating

> In full payment for the performance of his/her duties
> hereunder, SALESPERSON shall be compensated
> according to the terms and conditions of Schedule B
> attached hereto and expressly incorporated herein by
> reference.

Pl.'s Mem. (d/e 39) Attach. 2 p. 4, ¶ 3.  Neither party has submitted

what is identified as Schedule B in the Employment Agreement.

The Employment Agreement also included a non-compete

provision limiting Plaintiff's activities involving agriculture supply

outside of his employment with Defendant.  That paragraph states,

> During the term of SALESPERSON's employment with
> COMPANY and for a period of two (2) years thereafter,
> SALESPERSON shall not directly or indirectly, whether
> an individual or in connection with any other person or
> entity, engage in the business of selling products or
> services which are of the same or similar nature to these
> which were marketed by SALESPERSON during the last
> year of his/her employment with COMPANY in any
> territory or with a customer assigned to or serviced by
> SALESPERSON during the two (2) year period preceding
> his/her termination of employment.

Id. at ¶ 7.

On January 31, 2017, Defendant terminated Plaintiff's

employment.  While the reasons for Defendant's decision to

terminate Plaintiff's employment are disputed, the fact that Plaintiff

was 56 years old when he was terminated is undisputed.  Also undisputed is the fact that Defendant replaced Plaintiff with Jason Tarr, who was 42 years old at the time.  Lastly, following Plaintiff's termination, Plaintiff began working at Ag-Land, FS, another agriculture supply company in February 2017.  Plaintiff worked there until January 2019.

In October 2018, Plaintiff filed suit against Defendant. Plaintiff filed an Amended Complaint in May 2019 in which Plaintiff alleged one Count of violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115 et seq.  Defendant filed an Answer and Counterclaim later the same month alleging Plaintiff breached the non-compete provision of the Employment Agreement.  Defendant now moves for summary judgment on each of Plaintiff's claims.  Plaintiff, in turn, moves for summary judgment on Plaintiff's Wage Act claim and Defendant's counterclaim for breach of contract.

## II.    LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
The movant bears the initial responsibility of informing the Court of
the basis for the motion and identifying the evidence the movant
believes demonstrates the absence of any genuine dispute of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
"[S]ummary judgment is the 'put up or shut up' moment in a
lawsuit, when a party must show what evidence it has that would
convince a trier of fact to accept its version of events."  Johnson v.
Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

On that evidence, the Court must determine whether a
genuine dispute of material facts exists.  A genuine dispute of
material fact exists if a reasonable trier of fact could find in favor of
the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir.
2012).  When ruling on a motion for summary judgment, the Court
must construe facts in the light most favorable to the nonmoving
party and draw all reasonable inferences in the nonmoving party's
favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

The above-stated standards for summary judgment remain
unchanged when considering cross-motions for summary judgment:
the Court must "construe all inferences in favor of the party against

whom the motion under consideration is made." <u>Oneida Nation v. Vill. of Hobart, Wis.</u>, 371 F. Supp. 3d 500, 508 (E.D. Wis. 2019) (quoting <u>Metro. Life Ins. Co. v. Johnson</u>, 297 F.3d 558, 561–62 (7th Cir. 2002)).

## III.   ANALYSIS

### a. Summary Judgment is denied as to Plaintiff's ADEA claim.

Defendant first moves for summary judgment on Count I of Plaintiff's Complaint in which Plaintiff alleges violations of the Age Discrimination in Employment Act ("ADEA").  Under the ADEA, covered employers may not "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA later clarifies that the prohibition on age discrimination "shall be limited to individuals who are at least 40 years of age."  <u>Id.</u> at § 631(a).

To prove a claim of discrimination under the ADEA and survive a challenge to such a claim at the summary judgment stage a plaintiff must show that the "evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action."  <u>Ortiz v. Werner Enters., Inc.</u>,

834 F.3d 760, 765 (7th Cir. 2016).  A plaintiff may do so by either submitting direct evidence of discrimination, such as explicit statements of discriminatory motivation, or by proceeding under the burden-shifting approach first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Hoffman v. Primedia Special Interest Publ'ns, 217 F.3d 522, 524 (7th Cir. 2000).

Plaintiff does not offer direct evidence of discrimination here. Instead, he proceeds under McDonnell Douglas.  Under the McDonnell Douglas approach, the plaintiff carries the initial burden raising an inference of discrimination.  Hoffman, 217 F.3d at 524. A plaintiff does so by proving a prima facie case of discrimination, that is, by showing (1) he was at least 40 years old, (2) he was performing his job satisfactorily, (3) he was discharged, and (4) other substantially younger employees were treated more favorably. Id.  The plaintiff may satisfy the fourth prong of the analysis by "demonstrate[ing] that he was replaced by a younger person, as long as the replacement is not 'insignificantly younger.'"  Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1028 (7th Cir. 1998) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996).

Once the plaintiff makes out a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the discharge or difference in treatment.  Id.  If the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for discrimination.  Id.

Plaintiff argues that, using the McDonnell Douglas approach, he has made out a prima facie case of discrimination which raises a question from which reasonable jurors could conclude Defendant discriminated against Plaintiff because of Plaintiff's age.  Defendant, on the other hand, argues that Plaintiff's prima facie case is deficient and, therefore, Plaintiff's ADEA claim fails.  While Defendant concedes that Plaintiff was an employee older than 40 and that Plaintiff was discharged, Defendant challenges the remaining two elements of Plaintiff's prima facie case, arguing that Plaintiff did not perform his job satisfactorily and that Plaintiff cannot show substantially younger employees were treated more favorably.

Plaintiff satisfied the fourth element of his prima facie case by showing that he was replaced by someone substantially younger.

In <u>O'Connor v. Consolidated Coin Caterers</u>, the plaintiff was, like Plaintiff here, 56 years old and the replacement was 40 years old. 517 U.S. at 309–10.  While both the plaintiff and the replacement were each covered by the ADEA, the Supreme Court held that "[t]he fact that one person in the protected class has lost out to another person in the protected class is[] irrelevant, so long as [the plaintiff] has lost out because of his age."  <u>Id.</u> at 312.  Because the plaintiff in <u>O'Connor</u> was 16 years older than his replacement, the Court held that he had satisfied the replacement element of the prima facie case under McDonnell Douglas.  <u>Id.</u> at 312.

In this case, Plaintiff has shown that he, a 56-year-old, was replaced by someone substantially younger, a 42-year-old.  While, at age 42, the replacement would have also been covered by the ADEA, the significant difference between the replacement's age, 42, and Plaintiff's age, 56, is nearly identical to the difference in age between the plaintiff and the replacement in <u>O'Connor</u>.  Moreover, the Seventh Circuit has stated that a 10-year age difference is "presumptively 'substantial' under <u>O'Connor</u>."  <u>Hartley v. Wisconsin Bell, Inc.</u>, 124 F.3d 887, 893 (7th Cir. 1997).  Here, Plaintiff was 14 years older than his replacement.  Under <u>O'Connor</u> and <u>Hartley</u>,

Plaintiff has satisfied the replacement element of his prima facie case.

Defendant argues that Plaintiff was not performing his job satisfactorily, was terminated on that basis, and, therefore, cannot make out a prima facie case for failure of the satisfactory-work element.  When a defendant employer argues "that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the [satisfactory-work element] of the plaintiff's prima facie case and the pretext analysis." Everroad v. Scott Truck Sys., Inc., 604 F.3d 471, 477–78 (7th Cir. 2010).  In such cases, the Court "may skip the initial burden shifting of the [McDonnell Douglas approach] and focus on the question of pretext." Adelman-Reyes v. Saint Xavier Univ., 500 F.3d 662, 665 (7th Cir. 2007).

"Pretext means a dishonest explanation, a lie rather than an oddity or error." Bodenstab v. County of Cook, 569 F.3d 651, 657 (7th Cir. 2009).  To demonstrate pretext, a plaintiff must show, by a preponderance of the evidence, that the defendant's proffered reason for the termination is "unworthy of credence." Id.; Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 724 (7th Cir. 2005).  The

plaintiff must show more than the plaintiff's belief that the defendant's decision was mistaken, ill-considered, or foolish.  Id. "[A]s long as [the employer] honestly believes those reasons, pretext has not been shown."  Id. (quoting Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006)).

However, a plaintiff may avoid summary judgment in a discrimination case if the plaintiff can produce evidence that the defendant's proffered reasons "are factually baseless, did not actually motivate the defendants, or were insufficient to motivate the adverse employment action."  O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002).  "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment."  Id. (quoting Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995)).  Importantly, "once the employee has cast doubt upon the employer's proffered reasons for the termination, the issue of whether the employer discriminated against the plaintiff is to be determined by the jury—not the Court."  Rudin, 420 F.3d at 726.

Defendant argues that Plaintiff was terminated because his work was not satisfactory.  First, Defendant asserts that Plaintiff

routinely submitted seed treatment, chemical spraying, and dry fertilization orders late.  Def. Mot. (d/e 37) pp. 13–14.  Defendant also argues that Plaintiff was a poor communicator and that Plaintiff's performance issues were discussed with him multiple times.  Id. at pp. 15–16.  Plaintiff challenges these stated reasons by arguing that Defendant has not offered any documentary evidence to support the claims.

The Court agrees with Plaintiff.  Defendant relies on limited evidence to support its assertions that Plaintiff was late in submitting various orders or that Plaintiff was a poor performer. Defendant submits an undated, unlabeled, and handwritten note bearing the signature of Defendant's seed marketing manager, Mr. Ator, see Def.'s Mot. (d/e 37) Ex. 9, as well as excerpts from Mr. Ator's deposition in which Mr. Ator makes assertions about fees being assessed because of unspecified deadlines Plaintiff missed. Id. at Ex. 6 at 10:23–11:14 & 12:18–23.  But Defendant has not put forth any performance reviews, purchase orders, or other company documents that would corroborate the assessed fees and missed deadlines.  The note itself also states that the marketing manager waived the assessed fee.  Id. at Ex. 9.  Moreover, Plaintiff's

agronomy marketing manager, Mr. Rich Archer, himself testified that Defendant had no documented issues with Plaintiff's performance.  Def.'s Mot. (d/e 37) Ex. 8 36:2–10 ("Q: So your [Mr. Archer's] testimony is you think [Plaintiff] is the worst employee who has ever worked for you? A: That's a—yes, it is. Q: And despite that, you don't have one thing documented other than the Heil Hitler joke that [Plaintiff] made to Annette to [Plaintiff] about performance issues, correct? A: Correct.")  In all, the little evidence Defendant submits raises more questions that the evidence answers.  The Court, therefore, finds that Plaintiff has raised issues of fact on Plaintiff's termination that are to be determined by a jury.

Defendant also points to an offensive comment Plaintiff made to Annette Walker and alleged personnel issues as reasons for Plaintiff's termination.  Def.'s Mot. (d/e 37) at p. 14.  The comment at issue, which Plaintiff concedes he said, "Heil Hitler," to Ms. Walker in response to a work request from her, was made sometime before November 10, 2015, when Ms. Walker reported the comment to the Illiopolis location manager overseeing Plaintiff.  See Ex. 10. That comment is objectively abhorrent.  However, Plaintiff was not terminated until January 31, 2017, and while Defendant claims

Defendant made the decision to terminate Plaintiff sometime in 2016, the length of time between when Plaintiff made the comment and his eventual termination casts doubt on the veracity of Defendant's claim.  Like the evidence regarding Plaintiff's alleged work deficiencies, there is also little documentary evidence to support Defendant's claim that Plaintiff was terminated because of this or other workplace behavior issues.  Defendant relies only on Ms. Walker's testimony to show that Plaintiff had issues with co-workers.  But besides the single email about the inappropriate comment Plaintiff made to Ms. Walker, Defendant does not submit any documentary evidence such as formal complaints or disciplinary records to corroborate Ms. Walker's testimony.  This is the only disciplinary record Defendant submits over Plaintiff's 30 years of employment, which also occurred more than a year before Defendant terminated Plaintiff's employment.  On balance, the Court finds Plaintiff has also raised an issue of fact for a jury as to Defendant's stated reasons for terminating Plaintiff.

Defendant summarizes its stated reasons for terminating Plaintiff's employment in a single unlabeled, undated page which is not signed by any of Defendant's supervisory employees.  See Def.'s

Mot. (d/e 37) Ex. 4.  But Plaintiff has "cast doubt upon [Defendant's] proffered reasons for the termination."  <u>Rudin</u>, 420 F.3d at 726.  The Court finds that Plaintiff has adequately shown, by the preponderance of the evidence, that Defendant's stated reasons for terminating Plaintiff's employment are "unworthy of credence."  <u>Id.</u> at 724.  As a result, the Court further finds that Plaintiff has carried his burden under <u>McDonnell Douglas</u> and that a reasonable juror could conclude that Plaintiff was terminated because of his age.  Defendant's Motion for Summary Judgment (d/e 37) is DENIED as to Count I of the Amended Complaint.

### b. Summary Judgment is denied, with leave to refile, as to Plaintiff's Wage Act claim.

Each party seeks summary judgment as to Count II of Plaintiff's Complaint, in which Plaintiff alleges violations of the Illinois Wage Payment and Collection Act (the "Wage Act"), 820 ILCS 115 et seq.   As an initial matter, Plaintiff's claim in Count II is properly before the Court despite being labeled in the Amended Complaint "Illinois Sales Representative Act."  While "a complaint in federal court [must] allege facts sufficient to show that the case is plausible, . . . plaintiffs in federal courts are not required to plead

legal theories." <u>Hatmaker v. Mem'l Med. Ctr.</u>, 619 F.3d 741, 743. "Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction." <u>Id.</u>

Here, the first two sentences in Count II of the Amended Complaint clearly allege violations of the Wage Act. Am. Compl. ¶¶ 14 & 15 ("Harbour was employed by Prairieland as an 'employee' as that term is defined by the Illinois Wage Payment and Collection Act. Harbour was paid both a base salary and was also paid commissions on his sales. Both the salary and the commissions constitute wages under the Illinois Wage Payment and Collection Act.") Moreover, Defendant has had ample opportunity to address Plaintiff's Wage Act claims in both replying to Plaintiff's Response to Defendant's Motion for Summary Judgment and in filing Defendant's own Response to Plaintiff's Motion for Summary Judgment. Defendant, therefore, has not been harmed by the typographical error Plaintiff made in Count II of the Amended Complaint. <u>See</u> <u>Hatmaker</u>, 619 F.3d at 743.

Turning to the substance of Plaintiff's claim, under Section 5 of the Wage Act, employers are required to pay "the final compensation of separated employees in full . . . no later than the next regularly scheduled payday for such employee."  820 ILCS 115/5.  If an employer fails to pay a terminated employee his final compensation as required, the terminated employee may bring suit "for the timely and complete payment of earned wages and final compensation."  Khan v. Van Remmen, Inc., 756 N.E.2d 902, 912 (Ill. App. 2nd Dist. 2004).  "Final compensation" includes "wages, salaries, earned commissions, earned bonuses, and . . . any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the [two] parties."  820 ILCS 115/2.  The Illinois Department of Labor's implementing regulations state that a separated employee has a right to earned commissions "when the conditions regarding entitlement to the commission have been satisfied, notwithstanding the fact that, due to the employee's separation from employment, the sale or other transaction was consummated by the principal personally or through another agent."  56 Ill. Admin. Code § 300.510(a).  In any case, an employee will only be owed those commissions which are

earned by the services performed by the employee pursuant to an employment contract.  Id.

Plaintiff's employment by Defendant was governed by the Employment Agreement signed by both Plaintiff and Defendant. See Pl.'s Mem. (d/e 39) Attach. 2 pp. 4–5.  The Agreement states that Plaintiff was to be "compensated according to the terms and conditions of Schedule B attached hereto and expressly incorporated herein by reference."  Id.  While Plaintiff has attached the first two pages of the Agreement to his Memorandum of Law for Partial Summary Judgment, neither he nor Defendant has submitted Schedule B of the Agreement.  Without Schedule B of the Agreement, which the Agreement states governed the method by which Plaintiff was to be compensated, the Court cannot determine what Defendant promised Plaintiff, what the conditions for earning a commission were, whether Plaintiff fulfilled those conditions, or, ultimately, whether Defendant compensated Plaintiff in accordance with the Wage Act.  Therefore, both Plaintiff's Motion for Partial Summary Judgment (d/e 38) and Defendant's Motion for Summary Judgment (d/e 37) are DENIED as to Count II of Plaintiff's Amended

Complaint.  The parties are given leave to renew their arguments as
to Count II upon the submission of the full Employment Agreement.

### c. Summary Judgment is denied as to Defendant's counterclaim for breach of contract.

Plaintiff lastly seeks summary judgment on Defendant's single
Counterclaim in which Defendant alleges Plaintiff breached the
employment contract when Plaintiff went to work for another
business after Defendant terminated Plaintiff's employment.  Under
Illinois law, a breach of contract claim requires: "(1) the existence of
a valid and enforceable contract; (2) the performance of the contract
by plaintiff; (3) the breach of the contract by defendant; and (4) a
resulting injury to plaintiff." Hickox v. Bell, 552 N.E.2d 1133, 1143
(Ill. App. Ct. 1990).

The parties do not dispute that Plaintiff's employment with
Defendant was governed by the Employment Agreement.   See Pl.'s
Mem. (d/e 39) Attach. 2 pp. 4–5.  Relevant to Defendant's breach of
contract claims, the Agreement contains a non-compete provision
which states that Plaintiff "shall not . . . engage in the business of
selling products or services which are of the same or similar nature
to" those marketed by Plaintiff while he was employed by

Defendant.  Id. at ¶ 7; see also Pl.'s Statement of Undisputed

Material Facts No. 20.

A reasonable juror could find that Plaintiff violated the

employment contract.  As stated above in explicit terms, Plaintiff

was prohibited from "directly or indirectly" engaging in "the

business of selling products or services" similar to those Plaintiff

sold while employed by Defendant.  While Plaintiff disputes whether

Defendant lost business because of Plaintiff's employment with his

new employer, Ag-Land, by Plaintiff's own admission, Plaintiff

provided the same or similar services to former customers of

Defendant while employed by Ag-Land within two-years of his

termination from Defendant.  Pl.'s Mem. (d/e 38) pp. 14–15.  On

that admission alone, the Court finds that a reasonable juror could

conclude that Plaintiff violated the non-compete provision of the

Employment Agreement.

Plaintiff's only argument for summary judgment on

Defendant's counterclaim is that, in Plaintiff's view, Defendant

cannot show Defendant suffered damages for lost profits.  But "a

failure of proof of damages does not justify the dismissal of a claim

for breach of contract, as it does most tort claims. The victim of a

breach of contract is always entitled to nominal damages if he proves a breach but no damages." <u>Olympia Hotels Corp. v. Johnson Wax Dev. Corp.</u>, 908 F.2d 1363,1366 (7th Cir. 1990).

Defendant has shown that a reasonable juror could conclude that Plaintiff violated the non-compete provision of the Employment Agreement. Accordingly, Plaintiff's Motion for Partial Summary Judgment (d/e 38) is DENIED as to Defendant's counterclaim.

## IV.   CONCLUSION

Based on the undisputed material facts now before the Court, Plaintiff has shown that a material dispute exists as to Plaintiff's ADEA allegations in Count I of the Amended Complaint. Additionally, material issues of fact as to Plaintiff's Illinois Wage Payment and Collection Act allegations in Count II preclude any finding by the Court as to those claims. Lastly, Defendant has shown that a material dispute exists as to Defendant's counterclaim. Accordingly, both Defendant's Motion for Summary Judgment (d/e 37) and Plaintiff's Motion for Partial Summary Judgment (d/e 38) are DENIED as to Counts I and II and Defendant's counterclaim. The parties are, however, given leave to refile partial motions for summary judgment on Count II.

**IT IS SO ORDERED.**
**ENTERED: March 23, 2022.**
**FOR THE COURT**

_/s/ Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**